**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

SIONYX, LLC and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

Plaintiffs,

HAMAMATSU PHOTONICS K.K. HAMAMATSU CORP., OCEAN OPTICS, INC., AND DOES 1 THROUGH 10,

Defendants.

Civil Action No. 15-cv-13488-FDS

**JURY TRIAL DEMANDED**

**PLAINTIFFS' OPPOSITION TO OCEAN OPTICS, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

III. ARGUMENT ........ 6

A. Summary Judgment Standard ........ 6

B. Plaintiffs Are Entitled to Damages Against Ocean Optics. ........ 6

C. Factual Disputes Preclude Any Determination on Summary Judgment as to Whether Plaintiffs Are Entitled to An Injunction. ........ 9

1. Facts In Evidence Support That Plaintiffs Will Suffer Irreparable Harm Absent an Injunction Against Ocean. ........ 10

2. Facts In Evidence Support That Monetary Damages Are Inadequate to Compensate Plaintiffs For Their Injury. ........ 16

3. Facts In Evidence Support that the Balance of Harms Favors Plaintiffs. ........ 17

4. An Injunction Would Be in the Public Interest. ........ 18

IV. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 649 F.3d 1312 (Fed. Cir. 2012)....................18

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 154-60 (1970) ....................6

*Apple v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ....................7

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683 (Fed. Cir. 2008) ....................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................6

*Commonwealth Sci. & Indus. Res. Org. v. Buffalo Tech., Inc.*, 492 F. Supp. 2d 600 (E.D. Tex. 2008)....................12

*Cordance Corp. v. Amazon, Inc.*, 730 F. Supp. 2d 333, 339 (D. Del. 2010)....................13

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013)....................12, 14

*Dow Chem. v. Mee Indus.*, 341 F.3d 1370 (Fed. Cir. 2003) ....................1, 6, 7

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)....................9, 10, 12

*First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968) ....................6

*Fractus S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802 (E.D. Tex. 2012) ....................13, 14

*Innogenetics N.V. v. Abbot Labs.*, 512 F.3d 1363 (Fed. Cir. 2008)....................16

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1493 (Fed. Cir. 1990)....................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....................6

*Mytee Prods. v. Harris Research, Inc.*, 439 Fed. Appx. 882 (Fed. Cir. 2011) ....................10

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp*, 702 F.3d 1351, 1362 (Fed. Ci. 2012)....................12

*Red Bend Ltd. v. Google Inc.*, 2011 U.S. LEXIS 36217, *60 (D. Mass. Mar. 31, 2011) ....................13

*Shockley v. Arcam, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001)....................8

*Smith & Nephew, Inc. v. Interlace Med., Inc.*, 955 F. Supp 2d 69 (D. Mass. 2013) ....................18

*Suprema, Inc. v. Int'l Trade Comm'n*, 796 F. 3d 1338 (Fed. Cir. 2015) (en banc) ......................10

*Triumph Packaging Grp. v. Ward,* 834 F. Supp. 796 (N.D. Ill. 2011) ..................................12, 13

*Veracode v. Appthority, Inc.*, 137 F. Supp. 3d 17 (D. Mass. 2015).......................................14, 18

*Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir. 1975)..................................................................6

**STATUTES**

35 U.S.C. § 284...............................................................................................................1, 6, 7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 56 ..........................................................................................6

Plaintiffs SiOnyx, LLC ("SiOnyx") and President and Fellows of Harvard College ("Harvard") (collectively "Plaintiffs") hereby oppose Defendant Ocean Optics, Inc.'s ("Ocean") Motion for Summary Judgment (D. I. 484).

## I.      INTRODUCTION

Ocean moves to dismiss based on the faulty premise that even if Ocean is found liable for patent infringement, Plaintiffs are not entitled to an injunction or monetary damages against Ocean as a matter of law.  The Court should deny Ocean's Motion for Summary Judgment on either of two independent bases.  First, if the jury finds that Ocean has infringed either of the patents-in-suit, Plaintiffs are entitled to monetary damages against Ocean as a matter of law. Ocean is jointly and severally liable with Defendants Hamamatsu Corporation ("HC") and Hamamatsu Photonics K.K. ("HPK") for any infringing products sold by HC and HPK to Ocean and resold by Ocean to its customers.  The patent statute and the Federal Circuit are clear and unequivocal on this point: the Court has no discretion to decline to award damages against Ocean.  *See, e.g.*, *Dow Chem. v. Mee Indus.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003) (citing 35 U.S.C. § 284).  On this basis alone, summary judgment should be denied.  Second, at a minimum there are a number of disputes concerning facts material to determination of a permanent injunction against Ocean, precluding summary judgment of no injunction.  On that independent basis as well, the Motion should be denied because genuine disputes of material fact preclude summary judgment.

## II.      FACTUAL BACKGROUND

SiOnyx is the assignee of United States Patent No. 8,680,591 (the '591 patent).  Harvard is the assignee of United States Patent No. 8,080,467 (the '467 patent) (collectively the "patents-in-suit").  Harvard licensed the '467 patent to SiOnyx on an exclusive basis.  (*See e.g.*, Ocean's

Ex. G[1] at ¶¶ 129, 133 and documents cited therein.)

. (*See, e.g.,* Ocean's Ex. G at ¶ 139 and documents cited therein.) . (*See, e.g.,* Ocean's Ex. G at ¶ 140 and documents cited therein.)

Plaintiffs' Second Amended Complaint accuses Ocean of infringing the '467 patent and the '591 patent. (D.I. 304 at Counts XIX and XX.) Specifically Ocean purchases the accused S11510 charged coupled device ("CCD") image sensor from HC and HPK (*see e.g.,* Ex. 1[2] at pp. 6, 9), receives the S11510 in its United States facility (*see, e.g.,* Ex. 2 at 146:2-11, 146:23-147:3), incorporates the S11510 into its accused Ocean Maya2000 Pro NIR spectrometer product (*see e.g.,* Ex. 1 at p. 9; Ex. 2 at 68:6-18; Ex. 3 at 1), and ships the Maya2000 Pro NIR spectrometer to its customers all over the world (*see, e.g.,* Ex. 2 at 43:4-8, 146:2-11, 146:23-147:3). Before selling the S11510 to Ocean, HC purchases the S11510 from its parent company, HPK. (*See, e.g.,* Ex. 4 at 50:19-51:6; Ex. 5 at 38:10-20). HPK manufactures the S11510 and the other accused products, which it sells to outside customers as well as to its own subsidiaries who re-sell the accused products around the world. (*See, e.g.,* Ex. 5 at 38:10-20, 39:1-14, 41:1-5; Ex. 6 at 14-15.)

Ocean offers a range of configurations for its Maya2000 Pro line of spectrometers. (*E.g.* Ex. 3 at 1.) The standard version of the Maya2000 Pro, not accused here, incorporates the Hamamatsu S10420 CCD image sensor, an unenhanced CCD that is also not accused here. (*See id.*; Ex. 2 at 50:7-11; Ex. 7 at 1 (referencing the S10420 series as lacking the higher sensitivity in

---

[1] References to lettered exhibits herein are to Ocean's exhibits submitted with its Motion for Summary Judgment (D. I. 484).

[2] References to numbered exhibits herein are to Plaintiffs' exhibits submitted with this Opposition.

the infrared range found in the S11510).) [redacted]. (*See, e.g.,* Ex. 8 at 2, 4; Ex. 9 at 28:16-30:13, 31:7-33:1, 35:14-36:12, 37:6-9, 38:24-39:6, 39:20-40:2.) Ocean approached SiOnyx about supplying an image sensor sensitive in the infrared and near-infrared range for this purpose. (*See* Ex. 10 at 79:3-14, 80:4-81:2, 83:17-84:5, 85:21-87:5, 88:17-89:3, 90:20-91:22, 93:11-97:22, 99:5-15, Ex. 15 at 2; Ex. 16 at 3.) [redacted]. (*See, e.g.*, Ex. 1 at p. 6; Ex. 2 at 51:19-23.) [redacted] (*See, e.g.*, Ex. 1 at p. 6; Ex. 9 at 28:16-23.) Ocean incorporated the accused S11510 CCD image sensor into a new product in the Maya2000 Pro line, the accused Maya2000 Pro NIR, which Ocean states "[redacted]. (Ex. 8 at 2; *see also id.* at 4; Ex. 9 at 28:16-30:13, 31:7-33:1, 35:14-36:12, 37:6-9, 38:24-39:6, 39:20-40:2.) Ocean also noted that the accused Maya2000 Pro NIR [redacted] (Ex. 8 at 4) and that it was the optimum configuration in the 700-1100 nm range for low light measurements in the near-infrared range (Ex. 3 at 1). As Ocean testified, for customers requiring enhanced performance in the 700-800 nm range, the Maya2000Pro NIR is the best spectrometer. (Ex. 2 at 78:20-79:2.) This is in line with Hamamatsu's testimony that the infrared and near-infrared sensitivity of the



accused S11510 CCD was "significantly improved compared with the previous existing products from the S10420" family of devices. (Ex. 11 at 29:23-30:3; *see also* Ex. 7 at 1.) As HPK has noted, customers likely only purchase the enhanced Hamamatsu CCDs, such as the accused S11510, if they need improved performance in the infrared or near-infrared range. (Ex. 11 at 38:15-20.) Otherwise customers can purchase the less expensive unenhanced CCDs such as the S10420.

The ***only*** differences between the accused Maya2000 Pro NIR spectrometers and the non-accused Maya 2000 Pro versions is the inclusion of the accused Hamamatsu S11510 image sensor (compared to the S10420 used in the non-accused spectrometers)[3] and gold internal mirrors[4] (compared to aluminum mirrors in the non-accused spectrometers)[5]. (*See, e.g.*, Ex. 2 at 68:6-18, 69:1-23, 76:14-79:2; Ex. 9 at 38:24-39:6, 39:20-40:2; Ex. 8 at 2, 4.) This hardware difference creates the higher infrared and near-infrared sensitivity in the accused Maya2000 Pro NIR [redacted][6] (*See* Ex. 9 at 38:24-39:6, 39:20-40:2;

---

[3] Ocean's website shows that Maya2000 Pro versions called "Maya2000 Pro (custom)" are sold containing either the S10420 CCD or the S11510 CCD. (*See* Ex. 3 at 1.) There was some confusion among Ocean's 30(b)(6) designees about whether a Maya2000 Pro (custom) with an S11510 CCD would be categorized in their system as a Maya2000 Pro NIR. (*See* Plaintiffs' Response to Ocean's Statement of Undisputed Material Facts ("Pls' Resp. to SOUMF"), filed herewith, at Resp. to Statement No. 3 and documents cited therein.) In any event, any version of the Maya2000 Pro (custom) containing an S11510 CCD is accused here just the same as the Maya2000 Pro NIR, consistent with the testimony of Ocean's 30(b)(6) witness that a Maya2000 Pro (custom) with an S11510 CCD is essentially a Maya2000 Pro NIR in all but semantics. (*See id.*; *see also* Ex. 2 at 83:9-14.)

[4] There is no evidence that the use of gold for the internal mirrors is inventive or proprietary, at least not as it relates to the issues in the present case.

[5] Ocean misleadingly cites to the fourteen different gratings available in the Maya2000 Pro line to suggest that they constitute an additional hardware difference between the accused and non-accused spectrometers that can affect sensitivity in the relevant range. (*See* Ocean Br. at 2.) But as Mr. Ave testified these gratings are available on all Maya2000 Pro spectrometers, including the Maya2000 Pro NIR and therefore do not differentiate between the various models. (*See* Pls' Resp. to Ocean SOUMF at Resp. to Statement No. 6 and documents cited therein.)

[6] As discussed more fully in Pls' Resp. to Ocean's SOUMF at Resp. to Statement No. 8, Ocean misleadingly cites an excerpt from the testimony of Mr. Ave, its 30(b)(6) witness, for the proposition that a spectrometer utilizing the accused S11510 CCD could be configured to have the same sensitivity in the near-infrared range as a spectrometer using an unaccused S10420 CCD configured differently. (*See* Ocean Br. at 2.) Actually the witness testified that in a hypothetical situation one could purposely degrade the infrared performance of a spectrometer with the S11510 CCD by using gratings not designed to work in that range, to match that of a spectrometer with an S10420 CCD

Ex. 8 at 2, 4; Ex. 2 at 68:6-18; 69:1-23; 76:14-79:2.) [REDACTED]

[REDACTED]. And the feature of the S11510 CCD image sensor—its enhanced infrared and near-infrared sensitivity—[REDACTED] (*see, e.g.,* Ex. 1 at p.6) is the only difference between the S11510 and the standard, non-accused S10420 (Ex. 12 at 119:1-12; 122:13-21.) In the opinion of SiOnyx's technical experts, that infrared and near-infrared enhancement is possible in the S11510 because of the texture found on the S11510 corresponding to the claimed "texture region" recited by the'591 patent (Ocean's Ex. D ¶ 152) and the microstructured surfaces created by the methods claimed in the '467 patent (Ocean's Ex. F ¶ 155). [REDACTED].

Neither Ocean nor SiOnyx is aware of any product in the U.S. that is a viable alternative to the S11510 or SiOnyx's proprietary sensors that would provide Ocean with the required sensitivity in the infrared and near-infrared range. (*See* Ex. 2 at 107:7-108:20; Ex. 10 at 57:5-58:15.) SiOnyx's technical experts have also offered opinions that there are no non-infringing alternatives to the claimed inventions. (Ocean's Ex. D ¶¶ 149-157; Ocean's Ex. F ¶¶ 155-158.)

SiOnyx and HPK/HC are direct competitors for sales of image sensors. (Ex. 13 at 160:7-14, 266:12-16.) SiOnyx's CMOS images sensors compete directly with Hamamatsu's CCD image sensors (*id.*) and companies seeking to procure an image sensor would consider both CCD and CMOS image sensors. (Ocean's Ex. D ¶ 23).

---

which had the proper gratings for that range. (*See* Pls' Resp. to SOUMF at Resp. to Statement No. 8 and citations therein.) This is has no legal significance. Mr. Ave testified that "all things being equal [i.e., if both spectrometers were using the same gratings and had the same hardware], [] if all you did was change the detectors, then you would have it more responsive with the [S11]510 in those NIR [near infrared] regions." (Ex. 2 at 70:16-19.) That is, Mr. Ave testified that in two otherwise identically configured spectrometers except for the detector, the one using an S11510 detector would perform better in the near infrared range than the other spectrometer with a different, unenhanced non-accused detector.

## III. ARGUMENT

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Zweig v. Hearst Corp*., 521 F.2d 1129, 1133 (9th Cir. 1975). The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 154-60 (1970). If the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). There is no genuine issue for trial where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" *Matsushita Elec. Indus.*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the non-movant. *Matsushita*, 475 U.S. at 587.

### B. Plaintiffs Are Entitled to Damages Against Ocean Optics.

As a matter of law, if Plaintiffs show that Ocean infringed either of the patents-in-suit, the court "***shall award*** the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284 (emphasis added); *see also id.* ("When the damages are not found by a jury the court ***shall*** assess them" (emphasis added)). The Court has no discretion to deny monetary

damages if infringement is found. *Dow Chem. v. Mee Indus.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003). Thus, Ocean's argument that Plaintiffs cannot obtain monetary damages from Ocean must be rejected and its Motion should be denied.

Ocean relies on the fact that Plaintiffs' damages expert, Ms. Booth, did not provide an opinion on a hypothetical negotiation between Ocean and Plaintiffs or offer an opinion indicating the dollar amount of damages Ocean would specifically incur as damages for its infringement. (*See* Brief in Support of Ocean Optics, Inc.'s Motion for Summary Judgment (D. I. 484-1) ("Ocean Br.") at 2-3 (citing Ocean Statement of Undisputed Material Facts In Support of Its Motion for Summary Judgment (D. I. 484-2) ("Ocean SOUMF") ¶¶ 13-15).) The Court should reject this argument because it is inconsistent with well-established law. The Federal Circuit has held that even without a damages expert opinion, the Court ***must*** still award damages. *Dow Chem.*, 341 F.3d at 1381-82. As the Court held, "[35 U.S.C. § 284] is ***unequivocal*** that the district court ***must award damages*** in an amount no less than a reasonable royalty" and that "expert testimony is not necessary to the award of damages." *Id.* (emphasis added) (citing 35 U.S.C. § 284; *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1493, 1406 (Fed. Cir. 1990)); *see also Apple v. Motorola, Inc.*, 757 F.3d 1286, 1327-28 (Fed. Cir. 2014) (reversing District Court's decision granting summary judgment and explaining even "[i]f a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record" (citations omitted)). Thus, the fact that Ms. Booth provided no opinion on the specific amount of damages due from Ocean is of no consequence and does not support Ocean's Motion. Further, as set forth *supra* § II, there is significant evidence of the importance of the claimed technology to the accused Ocean Maya2000 Pro NIR and expansive discussion of this issue in Ms. Booth's Report.

Ocean's next argument, that if HPK were to obtain a license to the patents-in-suit, then products sold to Ocean would be covered by that license, misses the mark as well. (*See* Ocean Br. at 3 (*citing* Ocean SOUMF ¶ 15).) HPK does not have a license to Plaintiffs' patents, so no license flows through to Ocean. And even on a finding of infringement, HPK and HC would not "have a license." Rather they would be assessed damages for past infringement and enjoined from future infringement. If Plaintiffs show that the S11510 CCD image sensor practices the asserted claims, then Ocean is an infringer through its use and sale of its Maya2000 Pro NIR spectrometer incorporating the S11510. Ocean would be a joint and several tort-feasor with HPK and HC for the S11510 units it purchased and resold in Maya2000 Pro NIR spectrometers.[7] *See Shockley v. Arcam, Inc.,* 248 F.3d 1349, 1364 (Fed. Cir. 2001) ("[P]arties that make and sell an infringing device are joint tort-feasors with parties that purchase an infringing device for use or resale." (citations omitted)). "Entry of judgment against one infringer does not automatically release other related infringers." *Id.* (citations omitted). Rather, "[e]ach joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee." *Id.* (citations omitted). There can be no double recovery for infringing sales of the same units (*id.*), so if HPK or HC actually pay monetary damages on sale of an S11510 CCD to Ocean, then a simultaneous recovery from Ocean would be precluded. But this is putting the cart before the horse because there have been no damages yet awarded and there have been no damages paid by HPK or HC. Plaintiffs may obtain the full amount of relevant damages (units sold to Ocean) from ***any*** of the three infringers. HPK, a foreign entity, previously refused to accept service of the Complaint in this matter through its counsel, forcing Plaintiffs to go through the lengthy and

[7] For the same reason, the Court must reject Ocean's argument that it is not liable for damages because Plaintiffs' infringement analysis for Ocean is supposedly the same as its analysis of HPK and HC's infringements (*i.e.*, depending on the S11510 as an infringing device). If all three Defendants infringe through sale or use of a particular unit, then all three Defendants are jointly and severally liable.

costly process of service under the Hague Convention, and there is no certainty that HPK would pay a judgment issued against it. HC, a U.S. subsidiary of HPK, may attempt to reorganize or otherwise avoid a judgment. Regardless, Plaintiffs have the right to obtain damages from any of the jointly and severally liable patent infringers and need not elect at any time to drop one from the case.

Because as a matter of law Ocean is jointly and severally liable for its infringement and the Court lacks discretion to deny monetary damages against Ocean on a finding of infringement, Ocean's summary judgment motion should be dismissed.

### C. Factual Disputes Preclude Any Determination on Summary Judgment as to Whether Plaintiffs Are Entitled to An Injunction.

Independent of the grounds set forth *supra* § III.B, the Court should deny Ocean's Motion for Summary Judgement because there is a genuine question of material fact regarding whether Plaintiffs are entitled to an injunction against Ocean for its infringement of the patents-in-suit.

In order to obtain an injunction, a Plaintiff must satisfy a four factor test as set forth in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006):

> (1) The plaintiff has suffered an irreparable injury;
>
> (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
>
> (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
>
> (4) the public interest would not be disserved by a permanent injunction.

*Id.* at 391. Here, there are, at a minimum, disputes of material facts relating to each factor, precluding an award of summary judgment.

**1. Facts In Evidence Support That Plaintiffs Will Suffer Irreparable Harm Absent an Injunction Against Ocean.**

If the Court finds that Ocean infringes the patents-in-suit, then Plaintiffs will suffer irreparable harm absent an injunction. At a minimum there are disputes of material facts relevant to the determination of irreparable harm.

**a. Direct Competition In Not Dispositive of Irreparable Harm.**

Contrary to Ocean's argument (Ocean Br. at 5-7), whether the parties are direct competitors is not dispositive of the irreparable harm inquiry. The Federal Circuit has "never held [] that in order to establish irreparable harm a patentee must demonstrate that it is entitled to lost profits or that it is in direct competition with the infringer." *Mytee Prods. v. Harris Research, Inc.*, 439 Fed. Appx. 882, 887 (Fed. Cir. 2011) (non-precedential). Rather, the Federal Circuit has specifically held that injunctions are available against non-competitors, for example where, as here (*see supra* § II), Defendant is the downstream customer of another party who may be subject to an injunction. *See Suprema, Inc. v. Int'l Trade Comm'n*, 796 F. 3d 1338, 1368 (Fed. Cir. 2015) (*en banc*) ("District courts can enter injunctions preventing downstream customers from using the article in an infringing manner."); *see also, e.g., Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 702-03 (Fed. Cir. 2008) (affirming permanent injunction where Broadcom sold indirectly competing, non-practicing product, supporting showing of irreparable harm). Moreover, in *eBay*, the Supreme Court warned against creating broad classifications, emphasizing that the Court should apply the traditional four-factor test to the facts of each case. 547 U.S. at 393.

Although the Plaintiffs and Ocean are not direct competitors in the spectrometer market, SiOnyx[8] is a direct competitors with Ocean's suppliers HC and HPK (*see* Ex. 13 at 160:7-13; 266:12-16; *see also* Ocean's Ex. D ¶ 23) and SiOnyx has adduced evidence showing that its market share and sales have been reduced because of Ocean's infringement. Ocean purchases the accused S11510 CCD because [REDACTED] [REDACTED]. (*See supra* § II; *see also, e.g.,* Ex. 1 at p.6; Ex. 2 at 68:6-18, 69:1-23, 76:14-79:2; Ex. 8 at 2, 4; Ex. 9 at 28:16-30:13, 31:7-33:1, 35:14-36:12, 37:6-9, 38:24-39:6, 39:20-40:2.) Other than the accused Hamamatsu products and SiOnyx's technology, no other product on the market can [REDACTED] [REDACTED] (*See supra* § II; *see also, e.g.,* Ex. 2 at 107:7-108:20; Ex. 10 at 57:5-58:15; Ocean's Ex. D ¶¶ 149-157; Ocean's Ex. F ¶¶ 155-158.) And Ocean actually approached SiOnyx about obtaining image sensors from SiOnyx for this purpose. (*See supra* § II; *see also, e.g.,* Ex. 10 at 79:3-14, 80:4-81:2, 83:17-84:5, 85:21-87:5, 88:17-89:3, 90:20-91:22, 93:11-97:22, 99:5-15; Ex. 15 at 2; Ex. 16 at 3.)[9] Thus, absent Ocean's infringement, it would have had to purchase image sensors from SiOnyx in order [REDACTED]. And therefore, absent Ocean's infringement, SiOnyx's market share and sales would have increased by picking up at least the additional sales to Ocean. At a minimum, there is a genuine dispute on these material facts.

---

[8] Harvard is an indirect competitor of HPK/HC in light of the direct competition between its exclusive licensee SiOnyx and HPK/HC.

[9] Ocean notes that SiOnyx does not currently sell a sensor having the same dimensions as that used in the Maya2000 Pro NIR (*See* Ocean Br. at 3, 8.) This fact has no significance because SiOnyx's witness, Mr. Pralle, testified that SiOnyx would have had the ability to make a detector to meet Ocean's specifications if Ocean had used SiOnyx rather than Hamamatsu to supply the detector. (*See* Ex. 10 at 99:4-15.) At a minimum there is a factual dispute on any issue related to SiOnyx's ability to provide the required sensor to Ocean.

An independent grounds for finding irreparable harm sufficient to support an injunction against Ocean is the reputational harm to both SiOnyx and Harvard[10] from Ocean's infringement. The Federal Circuit has held that where a patentee has "never licensed the infringed patents, and intentionally chose not to, so that it could maintain market exclusivity," infringement of the patents can constitute irreparable harm. *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) (vacating denial of permanent injunction). As the Court noted, a patent "is an intangible asset that is part of a company's reputation, and here, [patentee]'s exclusive right to make, use, and sell the patented inventions is under attack by [infringer]'s infringement." *Id.* at 1345. Like the plaintiff in *Douglas Dynamics*, SiOnyx has never offered or provided any bare patent license on its own patents, like the '591 patent, or the patents it has a right to sublicense, like the '467 patent. Rather SiOnyx has consistently pursued a strategy to ***not license*** the patents-in-suit, endeavoring instead to build its business around its products and maintain its patent monopoly. (*See, e.g.*, Ocean's Ex. G at ¶¶ 156-159 and documents cited therein). Ocean's continued infringement of the patents-in-suit will irreparably harm SiOnyx's reputation as the sole owner and innovator of the claimed technology.

Harvard's reputation as a research organization, competing with other universities worldwide for "resources, ideas, and the best scientific minds to transform those ideas into reality" is also irreparable harmed by Ocean's continued infringement and its challenge to the validity of Harvard's '467 patent. *See Common. Sci. & Indus. Res. Org. v. Buffalo Tech., Inc.*, 492 F. Supp. 2d 600, 604 (E.D. Tex. 2008) (*rev'd on other grounds*, 542 F.3d 1363 (Fed. Cir. 2008); *see also eBay,* 547 U.S. at 393.. On that ground as well there is support for a showing of irreparable harm to Harvard sufficient to preclude summary judgment.

[10] Any dispute of material fact as to irreparable harm to either SiOnyx or Harvard is sufficient to defeat Ocean's Motion, which is premised upon the unavailability of an injunction for either Plaintiff.

The cases cited by Ocean do not support its argument that there can be no irreparable harm as a matter of law due to lack of direct competition between Ocean and Plaintiffs. (*See* Ocean's Br. at 5-6.) In *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, the Court vacated the denial of a permanent injunction. 702 F.3d 1351, 1362 (Fed. Ci. 2012). *Triumph Packaging Grp. v. Ward* did not involve any allegation of patent infringement. 834 F. Supp. 796 (N.D. Ill. 2011). Rather, the Court merely denied a motion for preliminary injunction on a non-compete agreement where the defendant was not a competitor of the plaintiff. *Id.* at 815. *Red Bend Ltd. v. Google Inc.* denied a preliminary injunction because, while there was evidence that the source code at issue had been downloaded, there was no evidence that it had been incorporated into any product. 2011 U.S. Dist. LEXIS 36217, *60 (D. Mass. Mar. 31, 2011). Further, *Red Bend* does not apply to injunctions issued after a full trial on the merits, *id.* at *59-60, and thus fails to support Ocean's Motion. *Cordance Corp. v. Amazon, Inc.,* which is not binding on this Court, denied a request for an injunction because plaintiff, unlike SiOnyx, did not offer any product practicing the claimed invention or attempt to show how sales of the infringing product affected its market or sales. 730 F. Supp. 2d 333, 339 (D. Del. 2010).

Lastly, not only is *Fractus S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802 (E.D. Tex. 2012), not controlling precedent in this District, but it is also unpersuasive due to significant, relevant factual differences to this case. *Fractus* involved use of an infringing antennae by the defendant Samsung in its cell phones. In denying Fractus's post-trial motion for a permanent injunction and finding no irreparable harm, the Court highlighted that "the evidence weighed toward a finding that Fractus had discontinued its cell phone antenna business in favor of licensing its patent portfolio related to such technologies." *Id.* at 843. By contrast there is no evidence that SiOnyx has provided bare patent licenses to the patents-in-suit nor is there

evidence that SiOnyx discontinued its presence in the marketplace. As discussed above, SiOnyx's strategy has been to maintain its patent monopoly and to focus on selling products. (*See, e.g.*, Ocean's Ex. G at ¶¶ 156-159 and documents cited therein). Thus there is irreparable harm to SiOnyx's reputation arising from Ocean's infringement, as recognized by the Federal Circuit in *Douglas Dynamics*, 717 F.3d at 1344-45, and not present in *Fractus*. The *Fractus* court also found that Fractus and Samsung's markets were completely distinct because, unlike here where SiOnyx and Hamamatsu are the only companies offering the accused capabilities, there were many other vendors of competing antennae from whom Samsung also purchased. 876 F. Supp. 2d at 853. Ocean has no similar option beyond SiOnyx.

**b. Plaintiffs Have Adduced Evidence of a Causal Nexus Between the Patented Feature and Demand for the Accused Products.**

In order to show irreparable harm, Plaintiffs must show "some connection between the patented feature and demand for the [the infringer's] products" but "it is not required to show that a patented feature is *the sole reason* for consumers' purchases." *Veracode v. Appthority, Inc.*, 137 F. Supp. 3d 17, 90 (D. Mass. 2015) (emphasis in original). Ocean relies on *Veracode* in its Motion (Ocean Br. at 5), but such reliance is unavailing because Plaintiffs have introduced evidence demonstrating that there is a connection between the accused functionality of Ocean's Maya2000 Pro NIR and customer demand. That is all that is required to show a casual nexus. *Veracode*, 137 F. Supp. 3d at 90. [REDACTED]

[REDACTED] (*See supra* § II.) [REDACTED]

[REDACTED] and the Maya2000 Pro NIR is able to attain that enhanced performance by using the enhanced S11510 CCD image sensor, which itself provides the enhanced capabilities only because it practices the claims of the patents-in-suit.

(*See supra* § II (discussing *e.g.,* Ex. 1 at p. 6; Ex. 2 at 51:19-23, 68:6-18, 69:1-23, 76:14-79:2, Ex. 7 at 1; Ex. 8 at 2, 4; Ex. 9 at 28:16-30:13, 31:7-33:1, 35:14-36:12, 37:6-9, 38:24-39:6, 39:20-40:2; Ex. 11 at 29:23-30:3, 38:15-20; Ex. 12 at 119:1-12, 122:13-21; Ocean's Ex. D ¶ 152; Ocean's Ex. F ¶ 155).) Thus there is, at a minimum, a factual dispute as to the causal nexus necessary to demonstrate irreparable harm.

**c. An Injunction Against HPK and HC May Not Prevent Ocean From Continuing To Acquire And Sell Accused Products.**

Another independent ground for finding irreparable harm is that an injunction against HPK and HC will not necessarily prevent Plaintiffs' competitors from continuing to supply infringing and competing products to Ocean. Ocean purchases the S11510 from HC, who purchases it from HPK. (*See supra* § II; *see also,* Ex. 1 at pp. 6, 9; Ex. 4 at 50:19-51:6; Ex. 5 at 38:10-20.) HPK has a number of subsidiaries through which it sells the accused products throughout the world, in addition to HC. (*See supra* § II; *see also* Ex. 5 at 38:10-20, 39:1-14, 41:1-5, Ex. 6 at 14-15.) An injunction against only HC and HPK, but not against Ocean, would leave open the possibility that Ocean could attempt to continue to purchase the S11510 and sell products incorporating the S11510 in the United States. Rather than purchasing from HC or directly from its parent HPK (both of whom would be enjoined from selling the S11510 in the United States), Ocean could look to purchase the devices from another HPK reseller subsidiary located outside the United States.[11] Hamamatsu may try to take the position that an injunction against HPK and HC would not necessarily reach to the other foreign reseller subsidiaries, leaving those subsidiaries free to purchase the accused devices from HPK outside the United States and then sell the accused devices to Ocean in the United States. In light of the repeated

[11] Those other subsidiaries are not Defendants here because, to Plaintiffs' knowledge, they do not currently sell the Accused Products in the United States.

arguments by HPK and HC throughout this case maintaining the fiction that HPK and its subsidiary HC are independent entities, there appears to be a strong possibility that Hamamatsu could take this position and attempt to supply Ocean through its other subsidiaries. An injunction against Ocean would prevent this irreparable harm to SiOnyx.

**2. Facts In Evidence Support That Monetary Damages Are Inadequate to Compensate Plaintiffs For Their Injury.**

The second *eBay* factor, whether monetary damages are adequate to compensate the patentee for the harm done to it by the infringement, is intertwined with the first factor and is generally considered on the same facts and in conjunction with the first factor. Thus, for all the reasons discussed *supra* § III.B.1, such as the irreparable harm to Plaintiffs' market and reputation, there are, at a minimum, disputes of material fact on this factor.

Ocean argues separately on this factor that Plaintiffs will be made whole for any future infringement by Ocean through royalties awarded against HPK and HC. This misstates the law and the relief that Plaintiffs are seeking. That Plaintiffs have sought a royalty on ***past*** sales does not imply that monetary damages are sufficient to make them whole on future sales. Plaintiffs seek an injunction against all future sales by all three Defendants. Plaintiffs only seek royalties on future sales as an alternative to the requested injunctions. If an injunction is denied as to HC and HPK and future royalties are awarded, Ocean is correct that there should be no injunction awarded against Ocean. But again this puts the cart before the horse: By not moving for summary judgment, HPK and HC have acknowledged that there are factual disputes that must be resolved at trial before determining whether HC and HPK are to be enjoined. Thus Ocean's reliance on future royalties being paid by HC or HPK fails. Such future royalties are speculative at this point. Ocean's argument that there should be no injunction against selling the S11510 CCD units that it already has in inventory similarly fails. No royalties have yet been awarded on

HPK and HC's sales of those units to Ocean, so an argument that Plaintiffs have already been compensated on those units is premature. For the same reasons the only case Ocean cited on this point, *Innogenetics N.V. v. Abbot Labs.*, 512 F.3d 1363, 1380 (Fed. Cir. 2008), is inapplicable because in that case the jury had already awarded future royalties and the Court denied an injunction on that ground.

**3. Facts In Evidence Support that the Balance of Harms Favors Plaintiffs.**

As set forth *supra* §§ II and III.B.1, Plaintiffs have introduced evidence showing that they will suffer significant harm, including to their market and reputation, in the absence of an injunction. Unless enjoined Ocean might continue to sell its spectrometers containing an infringing image sensor instead of purchasing image sensors from SiOnyx, who is the only other source of image sensors with the ability [REDACTED] [REDACTED]. (*See supra* § II, III.B.1; *see also* Ex. 1 at p.6; Ex. 2 at 68:6-18, 69:1-23, 76:14-77, 107:7-108:20; Ex. 8 at 2, 4; Ex. 9 at 28:16-30:13, 31:7-33:1, 35:14-36:12, 37:6-9, 38:24-39:6, 39:20-40:2; Ex. 10 at 57:5-58:15; Ocean's Ex. D ¶¶ 149-157; Ocean's Ex. F ¶¶ 155-158.) Thus the balance of harms tips in Plaintiffs' favor and at a minimum the balancing depends on disputes of material facts to be determined at trial.

Ocean again offers only a circular argument that depends on an assumption that HC and HPK will be subject to a future royalty on a showing of infringement. As discussed *supra* § III.B.2, Plaintiffs seek an injunction against HPK and HC, and future royalties only in the alternative. Thus it is premature to argue that Plaintiffs will be made whole for Ocean's infringement through HPK and HC's payment of future royalties. The ***only*** harm to Ocean from an injunction that Ocean attempts to identify is that it will supposedly not be able to "reap[] the

benefit of all the other non-infringing features of its spectrometers." (Ocean Br. at 8.) At a minimum there are disputes of fact on this assertion. As discussed *supra* § II, Ocean already offers non-accused spectrometers using unenhanced, non-accused Hamamatsu image sensors, that are otherwise identical to the accused Maya2000 Pro NIR and therefore convey ***all*** of the non-infringing features of the Maya2000 Pro NIR. (*See supra* § II; *see also* Ex. 9 at 38:24-39:6, 39:20-40:2; Ex. 8 at 2, 4; Ex. 2 at 68:6-18, 69:1-23, 76:14-79:2.) Thus an injunction would not prevent Ocean from "reaping the benefit" of ***any*** of the non-infringing features of the Maya2000 Pro NIR but would only prevent Ocean from taking advantage of features conveyed by infringement of the patents-in-suit through its use of the S11510 CCD image sensor (which itself only differs from the non-accused S10420 CCD in that it includes the accused functionality (*see, e.g.,* Ex. 12 at 119:1-12; 122:13-21)).

Because Plaintiffs have adduced evidence of the significant harm they would suffer in the absence of an injunction and Ocean has identified no potential harm to it from an injunction, at a minimum, disputes of material fact exist as to this factor on the balance of harms.

**4. An Injunction Would Be in the Public Interest.**

"The heart of the patent grant is the right to exclude." *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012). "[T]he public interest generally favors protecting the rights of patentees and enforcing the patent system." *Smith & Nephew, Inc. v. Interlace Med., Inc.*, 955 F. Supp. 2d 69, 80 (D. Mass. 2013). "In order for [the public interest] factor to weigh in favor of the [infringer], it must point to sufficient objective evidence of some public interest that would be disserved by a permanent injunction." *Veracode*, 137 F. Supp. 3d at 95. Ocean has not even attempted to point to objective evidence of any public interest that would be disserved by a permanent injunction. Rather Ocean makes only a vague, unsupported reference to the supposed unidentified "benefit" to the public of the "noninfringing

components" of its spectrometers. (Ocean Br. at 5.) As discussed *supra* § III.B.3, all of the non-accused features of the accused Ocean spectrometers would be unaffected by any injunction because those features are available in the non-accused spectrometers that Ocean offers, which are identical to the accused spectrometer, but for the accused image sensor. Further, Ocean points to no evidence supporting an assertion that there is ***any*** public interest in use of the accused Maya2000 Pro NIR, let alone evidence supporting that the public interest in the infringing device outweighs the strong public interest in the enforcement of patent rights. Thus, the strong presumption that an injunction for patent infringement is in the public interest stands. In any event, a challenge to this presumption by Ocean would, at most, raise a dispute of material fact.

## IV. CONCLUSION

For the foregoing reasons Plaintiffs respectfully request that the Court deny Ocean's Motion for Summary Judgment.

Dated: June 5, 2018

Respectfully submitted,

/s/ William D. Belanger

William D. Belanger
Massachusetts Bar No. 657184
Alison McCarthy
Anthony H. Cataldo
Gwendolyn Tawresey
Pepper Hamilton LLP
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
Telephone: 617.204.5100
Facsimile: 617.204.5150
Email: belangew@pepperlaw.com

*Counsel for Plaintiffs SiOnyx, LLC and President and Fellows of Harvard College*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2018, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing (NEF) to the following:

Alan E. McKenna, Esq.
Stevenson McKenna & Callanan LLP
21 Merchants Row, Fifth Floor
Boston, MA 02109
Ph: 617-330-5005
E-mail: amckenna@smcattorneys.com

John D. Simmons, Esq. (*pro hac vice*)
Stephen E. Murray, Esq. (*pro hac vice*)
Keith A. Jones, Esq. (*pro hac vice)*
Panitch Schwarze Belisario & Nadel LLP
One Commerce Square
2005 Market Street
Suite 2200
Philadelphia, PA 19103
Ph: 215-965-1330
E-mail: jsimmons@panitchlaw.com
E-mail: smurray@panitchlaw.com
E-mail: kjones@panitchlaw.com

Koichiro Minamino *(pro have vice)*
MINAMINO LAW OFFICE, PLLC
2000 Pennsylvania Ave NW Suite 6000
Washington, DC 20006 U.S.A.
Phone: 202-777-3638
E-mail: mick@minaminolaw.com

*/s/ William Belanger*
William Belanger