# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SIONYX, LLC and PRESIDENT AND<br>FELLOWS OF HARVARD COLLEGE | ) )<br>) | |
| *Plaintiffs,* | ) )<br>) | **Civil Action No. 1:2015-cv-13488** |
| **v.** | )<br>) | **Jury Trial Demanded** |
| HAMAMATSU PHOTONICS K.K. and<br>HAMAMATSU CORPORATION, | ) )<br>) | |
| *Defendants.* | )<br>) | |

### DEFENDANT HAMAMATSU PHOTONICS K.K.'S OPPOSITION TO PLAINTIFF SIONYX, LLC'S MOTION TO AMEND JUDGMENT UNDER RULES 59(E) AND 60 OF THE FEDERAL RULES OF CIVIL PROCEDURE

# TABLE OF CONTENTS

Page

I.    Introduction ........................................................................................................... 1

II.   Argument .............................................................................................................. 2

A.   Legal Standard ................................................................................................. 2

B.   SiOnyx Itself Introduced Any Problematic Language in the Jury Instructions, and Failed to Timely Address Any Alleged Issue ................................................................ 3

C.   The Evidence at Trial Further Demonstrates That the Jury's Inventorship Finding Does Not Warrant Extraordinary Relief .................................................................... 6

1.   SiOnyx Failed to Meet its Burden to Show Sole Inventorship by Clear and Convincing Evidence ............................................................................................. 6

2.   There is Ample Record Evidence Supporting Contributions by Named HPK Inventors 8

III.  Conclusion ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010)............................................................................................5

*Biltcliffe v. CitiMortgage, Inc.*,
    772 F.3d 925 (1st Cir. 2014) ...........................................................................................2, 4

*Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*,
    784 F.3d 37 (1st Cir. 2015) .............................................................................................2, 4

*Burroughs Wellcome Co. v. Barr Lab., Inc.*,
    40 F.3d 1223 (Fed. Cir. 1994)............................................................................................9

*Ellicott v. Am. Capital Energy, Inc.*,
    Civ. No. 14-12152-FDS, 2017 U.S. Dist. LEXIS 50592 (D. Mass. Apr. 3,
    2017) ...................................................................................................................................2

*Ethicon, Inc. v. U.S. Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998)..........................................................................................5

*Fiers v. Revel*,
    984 F.2d 1164 (Fed. Cir. 1993)..........................................................................................9

*Genentech Inc. v. Novo Nordisk A/S*,
    108 F.3d 1361 (Fed. Cir. 1997)..........................................................................................5

*Hess v. Advanced Cardiovascular Sys., Inc.*,
    106 F.3d 976 (Fed. Cir. 1997), cert. denied, 520 U.S. 1277 (1997) ..........................6

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005)..........................................................................................5

*Merchia v. Va. Bd. of Med.*,
    Civ. No. 18-11136-FDS, 2019 U.S. Dist. LEXIS 74821 (D. Mass. May 2,
    2019) ...............................................................................................................................2, 3

*Perez v. Lorraine Enters.*,
    769 F.3d 23 (1st Cir. 2014) ................................................................................................2

*Permutit Co. v. Graver Corp.*,
    284 U.S. 52 (1931)..............................................................................................................5

*Soto-Padró v. Pub. Bldgs. Auth.*,
    675 F.3d 1 (1st Cir. 2012)...................................................................................................2

*Stiftung v. Renishaw PLC*,
   945 F.2d 1173 (Fed. Cir. 1991)............................................................................................10

*Torosian v. Garabedian*,
   Civ. No. 15-11887-FDS, 2016 U.S. Dist. LEXIS 136992 (D. Mass. Oct. 3,
   2016) ........................................................................................................................................3

*Vas-Cath Inc. v. Mahurkar*,
   935 F.2d 1555 (Fed. Cir. 1991)..............................................................................................5

## I.  INTRODUCTION

SiOnyx's[1] motion under Fed. R. Civ. P. 59(e) and 60(b) should be dismissed because there is no basis for the relief being sought.  SiOnyx asks this Court to wholly ignore the jury's verdict finding that Dr. James Carey is merely a co-inventor on HPK's[2] patents, allegedly on the basis of an erroneous jury instruction.  SiOnyx seeks this extraordinary relief despite:

- not having ever objected to the original inventorship instruction;

- not proposing the instruction it now seeks despite having the opportunity when the jury requested clarification;

- never having moved for summary judgment or as a matter of law, which it surely would have done if sole inventorship by Dr. Carey was truly so clear from the evidence; and

- analyzing the claims of the nine HPK patents in so conclusory a fashion at trial so as to fail to meet its heavy burden of ***clear and convincing evidence***.

Simply put, this motion is late, and as such is improper and fails to justify the exceptional circumstances that would warrant the relief sought.  SiOnyx mischaracterizes and baldly belittles the evidence presented at trial, which was more than adequate to support the jury's finding that Dr. Carey is only a co-inventor on HPK's patents.  HPK respectfully requests that the Court deny SiOnyx's motion for at least these reasons.

---

[1]  Plaintiff SiOnyx, LLC ("SiOnyx").

[2]  Defendant Hamamatsu Photonics K.K ("HPK").

II.   <u>A<small>RGUMENT</small></u>

## A.  Legal Standard

"Rule 59(e) is an extraordinary remedy, to be used sparingly." *Perez v. Lorraine Enters.*, 769 F.3d 23, 32 (1st Cir. 2014).  Such relief should only be granted in the event of a "manifest error of law," new evidence, "or in certain other narrow situations." *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014); *see also Ellicott v. Am. Capital Energy, Inc.*, Civ. No. 14-12152-FDS, 2017 U.S. Dist. LEXIS 50592, at *5 (D. Mass. Apr. 3, 2017).  However, a motion under Rule 59(e) "is not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment, nor is it a mechanism to regurgitate old arguments previously considered and rejected." *Biltcliffe*, 772 F.3d at 930 (internal citations and quotations omitted).  "Given all this, it is exceedingly difficult for a litigant to win a Rule 59(e) motion." *Soto-Padró v. Pub. Bldgs. Auth.*, 675 F.3d 1, 9 (1st Cir. 2012).

Rule 60(b) similarly allows for extraordinary relief that should be granted only sparingly. *Merchia v. Va. Bd. of Med.*, Civ. No. 18-11136-FDS, 2019 U.S. Dist. LEXIS 74821, at *3 (D. Mass. May 2, 2019) (internal quotations and citations omitted).  Rule 60(b) sets forth six reasons to justify such extraordinary relief. *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37, 41 (1st Cir. 2015).  SiOnyx's motion does not specify which is at issue in its particular motion, but based on the law and standard cited, SiOnyx appears to rely on Fed. R. Civ. P. 60(b)(6).  "[C]ourts considering motions under Rule 60(b)(6) ordinarily examine four factors: (1) the motion's timeliness, (2) whether *exceptional* circumstances justify *extraordinary* relief, (3) whether the movant can show a potentially meritorious claim or defense, which, if proven, could bring her success at trial, and (4) the likelihood of unfair prejudice to the opposing party." *Bouret-Echevarria*, 784 F.3d at 43 (emphasis added).

2

This Court has previously indicated that a motion for post-judgment relief filed within twenty-eight days of judgment should be considered under Fed. R. Civ. P. 59(e), rather than under Rule 60(b). *See Merchia*, 2019 U.S. Dist. LEXIS 74821, at *1-2; *see also Torosian v. Garabedian*, Civ. No. 15-11887-FDS, 2016 U.S. Dist. LEXIS 136992, at *6 (D. Mass. Oct. 3, 2016).  Given the timing of SiOnyx's motion, it should therefore be treated under Rule 59(e), particularly since SiOnyx made no effort in its brief to address the four factors required for consideration under a Rule 60(b) motion.  However, Defendants will address SiOnyx's motion under both Rules.

## B.  SiOnyx Itself Introduced Any Problematic Language in the Jury Instructions, and Failed to Timely Address Any Alleged Issue

SiOnyx opens its motion alleging that the inventorship verdict "resulted from an erroneous jury instruction stating that the method of forming the claimed 'irregular asperity' was irrelevant."  D.I. 777-1 at 1.  The irony of this complaint is that the language comes *verbatim* from ***SiOnyx's own proposed jury instructions***: "the method of formation of the irregular asperity is irrelevant."  D.I. 691 at 40.  SiOnyx did not object to this instruction at any of the charge conferences (*see* Transcripts of May 6 and May 7, 2019 Jury Charge Conferences), during the May 7 or May 8 morning conferences (D.I. 764 at 4:4-25:5; D.I. 765 at 4:4-19:21), or following the charge to the jury (D.I. 765 at 138:8-139:6).

SiOnyx ***now*** argues that the "jury should have been instructed that conception of a single embodiment of the claims by Dr. Carey meant that he is t (*sic*) sole inventor, even if the claims are not limited to that single embodiment."  D.I. 777-1 at 10.  However, SiOnyx ***never proposed such an instruction*** to the Court, or any other instruction regarding the role of the specification in determining inventorship, despite ample opportunity to do so before the jury left to deliberate. *See e.g.*, D.I. 691 at 40; Transcripts of May 6 and May 7, 2019 Jury Charge Conferences; D.I.

3

764 at 4:4-25:5; D.I. 765 at 4:4-19:21, 138:8-139:6.  Even when the jury sought clarification on the "irrelevant" language that SiOnyx itself had proposed, SiOnyx did not then propose the type of instruction it now seeks.  Rather, SiOnyx preferred to make clear to the jury "that if they find that Dr. Carey conceived of the mode for carrying out the invention that is disclosed in the specification, they should find him *an* inventor of the claimed subject matter" (D.I. 766 at 19:6-9 (emphasis added)), rather than "the sole inventor."  That the Court opted not to give this particular instruction is of no consequence – this language differs from the instruction SiOnyx now wishes it had proposed, and the jury ultimately did find that Dr. Carey was "an" inventor. SiOnyx waived any objection it had with the instruction.

SiOnyx further asserts that given a proper instruction, the jury could only have found that Dr. Carey was the sole inventor on the nine HPK patents.  D.I. 777-1 at 10.  Tellingly, SiOnyx never bothered to move for summary judgment on the issue, nor was inventorship the subject of any of the six JMOL motions SiOnyx raised at the close of Defendants' evidence (D.I. 765 at 12:10-15:9, 17:8-18:14).  If SiOnyx truly believed that sole inventorship was the only possible outcome from a properly instructed jury, it should have timely moved under Rule 50.  Because it did not, SiOnyx waived the right to bring a JMOL motion on the issue and was forced to file the present motion to cure its own error, which is too late.

Thus, SiOnyx's motion is directed to an argument that clearly could, and should, have been developed in some form prior to the verdict.  That is not a proper basis for a Rule 59(e) motion.  *Biltcliffe*, 772 F.3d at 930.  SiOnyx's failure to timely raise any such objection or move for judgment also demonstrates a lack of exceptional circumstances warranting the extraordinary relief it seeks under Rule 60(b).  *Bouret-Echevarria*, 784 F.3d at 43.  For at least these reasons, SiOnyx's motion is improper and should be denied.

SiOnyx also has not shown that the Court committed any error of law in omitting the instruction it actually did propose. SiOnyx does not cite a *single case* in its brief explaining the role of a patent specification in determining inventorship, an inquiry that is tied to the ***claims***. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Rather, SiOnyx relies on cases directed to the validity of a patent on written description and/or enablement grounds – which was <u>not</u> at issue in this case for the HPK patents. *See e.g.*, *Permutit Co. v. Graver Corp.*, 284 U.S. 52, 57-58 (1931)[3] (finding patent void for failure to meet requirements of old § 4888); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1358 (Fed. Cir. 2010) (holding claims invalid for lack of written description); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346-47 (Fed. Cir. 2005) (affirming invalidity of claims for failure to satisfy 35 U.S.C. § 112); *Genentech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1368 (Fed. Cir. 1997) (finding claims invalid for lack of enablement); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1567 (Fed. Cir. 1991) (remanding for determination of whether claims satisfy written description requirement). For at least the additional reason that SiOnyx has not given any basis for direct support of the instruction that the Court declined to present to the jury (which, as explained above was harmless anyway as Dr. Carey was found to be "an" inventor), SiOnyx's motion should be denied.

---

[3] SiOnyx also mischaracterizes the decision in *Permutit* as holding the patent invalid solely because the novel component was not described in the specification. D.I. 777-1 at 7. The Supreme Court found the patent void because the allegedly novel feature was missing from the specification ***and the claims themselves***. *Permutit*, 284 U.S. at 57-58.

### C.  The Evidence at Trial Further Demonstrates That the Jury's Inventorship Finding Does Not Warrant Extraordinary Relief

SiOnyx contends that if its newly proposed instruction had been read to the jury, then Dr. Carey necessarily would have been found to be the sole inventor on the nine disputed HPK patents.  D.I. 777-1 at 10.  However, the record demonstrates this assertion to be untrue.

#### 1.  SiOnyx Failed to Meet its Burden to Show Sole Inventorship by Clear and Convincing Evidence

As the challenger seeking correction, SiOnyx had the burden to establish by the high bar of ***clear and convincing evidence*** that Dr. Carey was the sole inventor for all nine of HPK's patents.  *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997), cert. denied, 520 U.S. 1277 (1997).  As this Court recognized, SiOnyx was required to show that ***no*** HPK inventor contributed to ***any*** claim of the HPK patents for Dr. Carey to be declared the sole inventor.  *See e.g.*, D.I. 566 at 43 ("a co-inventor need only contribute to a single claim to be properly listed on the patent") (*citing Ethicon*, 135 F.3d at 1460).

Despite this heavy burden, Dr. Carey analyzed only ***one claim*** from only one of the nine HPK patents in any detail while testifying before the jury (claim 1 of the '945 patent).  D.I. 755 at 66:11-67:24.  The remaining '945 patent claims and the claims of the other HPK patents[4] are addressed *en masse* generally, glossing over the particular claim elements in favor of Dr. Carey's "belief" that the patents "were existing Hamamatsu devices that added in an irregular asperity." *Id*. at 59:24-61:5.  Dr. Carey's alleged contribution lies solely in the "inclusion of an irregular asperity," and he broadly categorized the patent claims based only on whether that irregular asperity is on the light-incident side, the opposite side, or is not specified.  *Id*. at 59:24-61:5, 63:4-16, 65:5-10, 66:1-7.

---

[4]  Dr. Carey introduces the other eight patents in his testimony from D.I. 755 at 45:1-59:23 but does not mention or discuss any claim.

This analysis wholly ignores other aspects and elements of the claims and whether Dr. Carey actually contributed those elements, as he must to be a *sole* inventor. While Dr. Carey professes a "belief" that the HPK patents are directed only to existing HPK devices with an added irregular asperity, SiOnyx provided no evidence at trial that any of the "existing" HPK devices included all of the other claimed elements. Moreover, there is *no* evidence that Dr. Carey taught, discussed, or worked with anyone at HPK to incorporate an irregular asperity into avalanche photodiodes, CCDs, multi-pixel arrays, or OCT devices, as are recited in numerous claims throughout the HPK patents. *See* Exhibits A-I (Trial Exs. 148-154, 188-189). Dr. Carey's conclusory and scant testimony regarding the content of the vast majority of the HPK patent claims is insufficient to carry SiOnyx's clear and convincing burden.

SiOnyx's terse treatment of the HPK patent claims (which, as explained above, serve as the basis for determining inventorship) is further demonstrated by Dr. Carey's failure to substantively address any of the dependent claims in his testimony. As one example of why such analysis is critical, claim 2 of the '135 patent recites that the irregular asperity is "further formed" in a "region between the plurality of photodetecting channels." Ex. F at 153.56. There is no evidence of record Dr. Carey taught this element to HPK, particularly since his work with HPK was limited to single photodiodes, and not an array where such regions between photodetecting channels would exist. In another example, claim 5 of the '485 patent recites that the "silicon substrate has a thickness set to not more than a pixel pitch." Ex. B at 149.43. Once again, no evidence exists that Dr. Carey taught HPK anything about multi-pixel devices, and this cannot be deemed as part of an "existing" HPK device because the reason for this claim element is given in the specification as preventing crosstalk *caused by* the irregular asperity. *Id.* at 149.41, 14:13-20.

Inasmuch as SiOnyx failed to present evidence at trial sufficient to meet the high burden required to prove that Dr. Carey is the ***only*** inventor of the nine HPK patents, amendment under Rule 59(e) is unwarranted, and exceptional circumstances justifying extraordinary relief under Rule 60(b) are not present, and SiOnyx's motion should therefore be denied.

### 2. There is Ample Record Evidence Supporting Contributions by Named HPK Inventors

The jury also had ample evidence from which to determine that named HPK inventors had provided inventive contributions, despite SiOnyx's attempts to mischaracterize the evidence and testimony in its motion.

With respect to the element of the irregular asperity itself, SiOnyx's arguments harm its own cause. As described above, SiOnyx asserts in its motion that conception of a single embodiment of the claims is evidence of inventive contribution, even if the claims are not limited to that single embodiment. *See e.g.*, D.I. 777-1 at 10. Under that rationale, HPK inventor Mr. Nagano sufficiently demonstrated contribution to the claims via his November 2006 PowerPoint presentation, which shows the same architecture as Dr. Carey, but with the irregular asperity formed at least by dry etching,[5] rather than by laser. Ex. J (Trial Ex. 583); Ex. K (Trial Ex. 207); D.I. 760 at 16:18-17:12, 17:25-20:1. This presentation is dated prior to the disclosure of any architecture by Dr. Carey to HPK. Ex. L (Trial Ex. 144).

SiOnyx's critiques of this evidence are inaccurate. First, SiOnyx claims that the November 2006 presentation is undated, and cannot be considered as corroborating evidence. D.I. 777-1 at 11. This is untrue. Mr. Nagano testified, on cross-examination, that in the

---

[5]  It was also HPK's position that this presentation disclosed a laser embodiment. SiOnyx broadly states in its motion that this presentation does not discuss laser processing at all, which is entirely refuted by Mr. Nagano's testimony that laser texturing is discussed on fourteen of the eighteen slides. Exs. J, K; D.I. 760 at 15:24-16:17.

electronic version of the file produced bearing Bates number HPK0023918-935 (Ex. J (Trial Ex.

583)), the last update is indicated as being on November 24, 2006.  D.I. 760 at 38:5-12.  This

evidence went unrefuted.[6]  SiOnyx then argues that because dry etching is not described in any

of the HPK patents, it cannot serve as the basis for conception.  D.I. 777-1 at 11-12.  This is

SiOnyx attempting, yet again, to covertly read a laser into the "irregular asperity" element.

SiOnyx's argument necessarily presumes that the "novel aspect" of the claims is a laser-created

irregular asperity – but, as the Court has recognized, the term laser does not appear in most

claims.  Thus, taking a narrow view, the claimed "novel aspect" is merely the broader "irregular

asperity" itself, which would encompass a dry etch-formed version based on the claim

construction of the term, regardless of whether that particular exemplary embodiment was

incorporated into the specification later.  SiOnyx's twisted logic that the laser in the specification

limits the available embodiments to demonstrate conception is simply an attempt to revisit claim

construction, despite SiOnyx's hollow plea to the contrary.  D.I. 777-1 at 10.

SiOnyx next concludes that the November 2006 presentation is merely a general goal or

research plan, insufficient for conception.  *Id.* at 12.  Plaintiffs cite to *Burroughs Wellcome Co. v.

Barr Lab., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994), which itself cites *Fiers v. Revel*, 984 F.2d

1164, 1169 (Fed. Cir. 1993).  In *Fiers*, one of the inventor's alleged conceptions of a chemical

was insufficiently based ***on a property of that chemical*** the inventor ***hoped to achieve***, ***rather

than on structural detail*** or the process of making the chemical.  984 F.2d at 1168-69.  In the

present case, the November 2006 presentation includes device architectures[7] that are ***at least*** as

---

[6]  SiOnyx is fully aware of this fact, as the metadata was produced with the exhibit, showing a
"Last Modified Date" of November 24, 2006.
[7]  SiOnyx attempted at trial to argue that dry etching was a "failure," but this is an incorrect
characterization of the presentation.  Rather, texture that results from dry etching is considered a
failure of dry etching's conventional purpose, which is to create a planar surface.  D.I. 760 at

detailed as those proposed by Dr. Carey months later, and were not directed to a hoped-for

property, but rather a specific structure.  Finally, SiOnyx argued that Mr. Nagano only

recognized in 2008 that irregular asperities function better than regular asperities.  D.I. 777-1 at

12.  This is irrelevant.  An invention need not be required to work better than existing products to

be eligible for a patent.  *See e.g.*, *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1180 (Fed. Cir.

1991).  Accordingly, whether Mr. Nagano was aware of any benefits of irregular versus regular

asperities at the time has no bearing on whether there was a contribution to the claimed

invention.

Mr. Suzuki also testified at trial about contributions he made to various HPK patents, in

particular with respect to the texturing of CCDs (a product which, as described above, was not

one about which Dr. Carey shared information or worked on with HPK).  In particular, Mr.

Suzuki began considering a textured surface for CCDs at least as early as April 2006 as a means

to address the problem of etaloning – a type of noise in the response of a CCD detector.  D.I. 761

at 15:22-17:20.

SiOnyx argues that the two corroborating exhibits shown to Mr. Suzuki at trial relate to a

process referred to as "LOCOS," rather than laser, and therefore do not support Mr. Suzuki's

inventorship claims.  D.I. 777-1 at 13.  This statement is incorrect – Exhibit 62 does not mention

LOCOS or any particular texturing method.  Ex. M (Trial Ex. 62).  Instead, Exhibit 62 shows

Mr. Suzuki's schematic representation of varying the silicon thickness for addressing etaloning.

*Id*. at 62.31-32.  More egregiously, SiOnyx asserts that "none of the Disputed United States

Patents even mention 'etaloning.'"  D.I. 777-1 at 13.  Not only do the '485 and '226 patents on

---

14:19-15:8.  Mr. Nagano recognized that this "failure" could be turned into an advantage when
the goal is to intentionally create a textured surface.  *Id*.

which Mr. Suzuki is a named inventor expressly discuss etaloning in conjunction with the claimed invention, but Mr. Suzuki himself testified specifically about these passages in the '485 and '226 patents while on the witness stand.  Ex. B at 149.42, 15:21-34; Ex. D at 151.9, 1:35-46, and 151.13, 9:41-53; D.I. 761 at 27:15-28:6, 28:24-30:12.

SiOnyx's false comments regarding the evidence do not show that the jury would have found in its favor for sole inventorship.  As such, the verdict should be left undisturbed.

## III.   CONCLUSION

For at least the reasons set forth above, HPK respectfully requests that the Court deny SiOnyx's motion under Rules 59(e) and 60(b) to amend the jury's verdict regarding inventorship of the disputed HPK patents.

Date:   June 20, 2019                              By: /s/ Christopher A. Callanan
                                                   Christopher A. Callanan, Esq.
                                                   Stevenson McKenna & Callanan LLP
                                                   21 Merchants Row, 5th Floor
                                                   Boston, MA 02109
                                                   (p) 617-330-5005
                                                   (f) 617-330-5011
                                                   e: ccallanan@smcattorneys.com

                                                   John D. Simmons (admitted *pro hac vice*)
                                                   Stephen E. Murray (admitted *pro hac vice*)
                                                   Keith Jones (admitted *pro hac vice*)
                                                   Panitch Schwarze Belisario & Nadel LLP
                                                   2001 Market Street Suite 2800
                                                   Philadelphia, PA 19103
                                                   (p) 215-965-1330
                                                   (f) 215-965-1331

                                                   Koichiro Minamino (admitted *pro hac vice*)
                                                   Minamino Law Office, PLLC
                                                   2000 Pennsylvania Ave. N.W. Suite 6000
                                                   Washington, DC 20006-1888
                                                   (p) 202-777-3638

                                                   *Attorneys for Defendant Hamamatsu Photonics K.K.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that Defendant Hamamatsu Photonics K.K.'s Opposition to Plaintiff SiOnyx, LLC's Motion to Amend Judgment Under Rules 59(e) and 60 of the Federal Rules of Civil Procedure, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: June 20, 2019

/s/ Christopher A. Callanan
Christopher A. Callanan