## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| ) | |
| **SIONYX, LLC and PRESIDENT AND** ) | |
| **FELLOWS OF HARVARD COLLEGE,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **15-13488-FDS** |
| ) | |
| **HAMAMATSU PHOTONICS K.K.;** ) | |
| **HAMAMATSU CORPORATION;** ) | |
| **OCEAN OPTICS, INC.; and** ) | |
| **DOES 1 THROUGH 10,** ) | |
| ) | |
| **Defendants.** ) | |

_____)

### <u>MEMORANDUM AND ORDER ON CROSS-MOTIONS REGARDING COSTS</u>

**SAYLOR, C.J.**

This is an action for patent infringement, breach of contract, and correction of
inventorship. On October 1, 2015, plaintiffs SiOnyx, LLC and President and Fellows of Harvard
College filed this case against defendants Hamamatsu Photonics K.K. ("HPK") and Hamamatsu
Corp. ("HC"). On May 9, 2019, after a 13-day trial, a jury returned a verdict in plaintiffs' favor
on all counts. On July 25, 2019, the Court granted plaintiffs' motion for an injunction
transferring ownership to them of the disputed U.S. patents. On July 26, 2019, the Court entered
a judgment in their favor in accordance with its July 25, 2019 order and the May 9, 2019 jury
verdict.

On September 24, 2019, the Court granted in part and denied in part plaintiffs' motion to
amend the judgment, and amended the judgment accordingly. As relevant here, it denied

plaintiffs' request that the Court enter a judgment transferring ownership of certain "foreign counterpart" patents to the disputed U.S. patents to plaintiffs.

Defendants and plaintiffs appealed several issues to the Federal Circuit.  On December 7, 2020, the Federal Circuit issued a judgment reversing the Court's denial of SiOnyx's motion to compel defendants to transfer ownership of the "foreign counterpart" patents to SiOnyx.  It affirmed the judgment in all other respects.  On March 3, 2021, the Federal Circuit issued a mandate in accordance with its December 7, 2020 judgment.  On May 18, 2021, this Court amended the final judgment in accordance with that December 7, 2020 judgment.

Plaintiffs have now moved for an award of costs pursuant to Fed. R. Civ. P. 54(d).  Defendants have filed their own motion seeking to disallow costs.  In essence, they contend that plaintiffs' motion improperly inflated taxable costs by approximately $165,000.

For the reasons stated below, plaintiffs' motion for costs and defendants' motion to disallow will both be granted in part.

I.      **Analysis**

While the Court has discretion to award costs, that discretion is nonetheless "'bound by the limitations' established by [28 U.S.C.] § 1920, and costs not listed under that section may not be awarded."  *Palomar Techs., Inc. v. MRSI Sys., LLC*, 2020 WL 4938414, at *2 (D. Mass. Aug. 12, 2020) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).  Taxable costs include:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; [and] . . . (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

A.     **Fees of the Clerk and Marshal**

Among other items, plaintiffs seek costs of $71,137 for "service of the summons and subpoena."  (Pls. Supp. Mem. at 3-4).  Section 1920 does not include fees for "service of the summons and subpoena" in its list of taxable costs, nor do the procedures of this court.  Taxation of Costs, Procedures for Filing the Bill of Costs, https://www.mad.uscourts.gov/resources/pdf/taxation.pdf (last visited May 10, 2021).  Section 1920 and the court's procedures do, however, refer to "Fees of the Marshal."  *See* Taxation of Costs at 3; 8 U.S.C. § 1920(1).  Under that section, a party "may recover only the equivalent of the marshal's fee."  *Palomar*, 2020 WL 4938414, at *7.

Plaintiffs have not calculated a marshal's fee, but have provided invoices supporting their requests for costs.  (*See* Pls. Supp. Mem., Ex. 2).  For example, according to one of those invoices, "Japanese translation of the Amended Complaint for service on Hamamatsu" cost $69,700.  (*See id.*, Ex. 2 at 5).  In support of their request to recover such costs, plaintiffs cite two cases in which courts have awarded translation costs for service under the Hague Convention— that is, the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  (Pls. Supp. Mem. at 4 (citing *Int'l Petroleum Prods. & Additives Co. v. Black Gold S.A.R.L.*, 2020 WL 789567, at *5 (N. D. Cal. Feb. 18, 2020) (citing *Law Office G.A. Lambert & Assocs. v. Davidoff*, 72 F. Supp. 3d 110, 120 (D.D.C. 2014))).  In *Law Office*, the court awarded a "modest" translation fee of $875, while in *Int'l Petroleum Prods.*, the court awarded a translation fee of approximately $5,000.  *See Int'l Petroleum Prods.*, 2020 WL 789567, at *5 (citing *Law Office*, 72 F. Supp. 3d at 120); *Law Office*, 72 F. Supp. at 120.  By contrast, plaintiffs here seek more than $71,000.  And those cases are distinguishable because this court's procedures state that "only those costs specifically mentioned in 28 U.S.C. § 1920 are taxable."  *See* Taxation of Costs at 3.  Thus, the Court will disallow plaintiffs' request for

$71,137 for "service of the summons and subpoena."

      **B.**      **Fees for Printed or Electronically Recorded Transcripts**

Plaintiffs also seek costs of $18,506.41 for "printed or electronically recorded transcripts necessarily obtained for use in the case" pursuant to 28 U.S.C. § 1920(2).  (Pls. Supp. Mem. at 3).  That amount includes costs of $13,195.23 for preparing the transcripts and exhibits of fifteen depositions of eleven fact witnesses (two of whom were deposed twice) and two expert witnesses, six of which plaintiffs introduced at trial.  (*Id.* at 7).  In addition, plaintiffs request costs of $5,311.18 for preparing daily trial transcripts.

Deposition transcripts are taxable if "necessarily obtained for use in the case."  Taxation of Costs at 4.  That standard is met if the transcript is "either introduced into evidence or is used at trial."  *Smartling, Inc. v. Skawa Innovation Ltd.*, 2019 WL 3802524, at *2 (D. Mass. Aug. 12, 2019) (quoting *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 249 (1st Cir. 1985)).  As noted, plaintiffs introduced at trial the deposition videos of six of the fifteen defense witnesses they deposed—Atanda, Yamamoto, Yamamura, Ave, Morris, and Sakamoto—all of whom were fact witnesses.  Thus, costs related to those depositions were "necessarily obtained for use in the case" and are taxable.  The total transcript cost for those depositions amounts to $5,139.93, and the cost of exhibits for them amounts to $526.80, for a total of $5,666.73.  (Pls. Supp. Mem., App. A at 1).

As to the remaining nine depositions, they are taxable if warranted by "special circumstances."  *Smartling*, 2019 WL 3802524 at *2.  Use of a deposition transcript to prepare for trial or in a legal memorandum is not a sufficiently special circumstance.  *Id.* at *2-3.  However, courts have found that the standard was met where a party relied on a transcript in a successful dispositive motion, where the non-prevailing party had requested the deposition, or where the deposition was of a potential witness of the non-prevailing party.  *Bergeron v. Cabral*,

4

393 Fed. App'x 733, 735 (1st Cir. 2010) (dispositive motion); *Martinez v. Cui*, 2009 WL 3298080, at *2 (D. Mass. Apr. 13, 2009) (request by the non-prevailing party potential witnesses of non-prevailing party). In addition, a deposition transcript *may* be taxable if a witness resides out-of-state and thus may not be available to testify at trial. *Fidelity Intern. Currency Advisor A Fund, LLC, by Tax Matters Partner v. U.S.*, 2010 WL 5376382, at *1 (D. Mass. Dec. 20, 2010) (noting the possibility that such costs may be recoverable, but not reaching that issue because the witnesses in question testified at trial).

Plaintiffs contend generally that the depositions of the other nine witnesses were "necessary for [p]laintiffs' counsel's effective performance and the Court's handling of the case." (Pls. Supp. Mem. at 5, 7). They also contend that "each of the eleven witnesses"—likely referring to the fact witnesses—"lived out of state, many lived outside of the United States, and thus their attendance at trial could not be compelled." (Pls. Supp. Mem. at 7 (citing *Fidelity*, 2010 WL 5376382, at *1)). As to depositions of defendants' expert witnesses, plaintiffs contend that an award of costs related to those depositions is warranted "considering the complex technology and issues in this case." (Pls. Supp. Mem. at 7). However, other than those generic contentions, plaintiffs have not provided any specific basis for concluding that the depositions were warranted by "special circumstances" and were not solely for investigatory or discovery purposes. *See Martinez*, 2009 WL 3298080, at *2 (noting that courts are reluctant to award such costs where they were purely investigatory or for discovery purposes). In addition, with the exception of Nagano and Takeda—whose depositions, plaintiffs contend, were necessary to counsel's effective performance because they testified at trial— plaintiffs have not made any contentions specific to the remaining witnesses. (Pls. Supp. Mem. at 6, n.3).

Thus, without a showing of the "special circumstances" that apply to the depositions of the nine witnesses who did not testify at trial, their costs are not taxable.  Accordingly, the amount of $13,195.23 that plaintiffs seek to recover for deposition transcripts and exhibits will be reduced to $5,666.73.

Plaintiffs also seek costs for the preparation of daily trial transcripts, which they contend costs $7.25 per page and totals $5,311.18, or in the alternative, costs for the preparation of a standard trial transcript, which they contend costs $4.85 per page and totals $3,411.98.  (Pls. Supp. Mem. at 8).  Like transcripts of depositions, transcripts of trials are taxable only if "necessarily obtained for use in the case."  Taxation of Costs at 3.  Plaintiffs have not shown that such transcripts were introduced as evidence or used at trial.  *See 600lbGorillas, Inc. v. Fieldbrook Foods Corp.*, 2018 WL 6332494, at *4-5 (D. Mass. Dec. 4, 2018) (taxing costs for the preparation of nine daily trial transcripts used for closing arguments but disallowing costs for the other six daily trial transcripts).  And while it is true that some courts have permitted recovery of such expenses under some circumstances, they are not allowable as a matter of course.  *See Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 193 F.R.D. 26, 34 (D.P.R. 2000) (awarding cost of daily trial transcripts).

Plaintiffs contend that preparing the daily transcripts was necessary because of "the complexity of the technology at issue, the fact that witness testimony spanned multiple days, the translation of witness testimony from Japanese to English, and the number of issues in the case." (Pls. Supp. Mem. at 8).  But they do not explain with any specificity the claimed "special circumstances" that apply here.  *See Osorio v. One World Techs., Inc.*, 834 F. Supp. 2d 20, 23 (D. Mass. 2011) (denying costs for daily trial transcripts despite a plaintiff's general statements that the transcripts "were used to examine and cross examine witnesses and earlier testimony was

later read into the record.").  Accordingly, the Court will not award costs of preparing trial

transcripts—either at the standard rate or the higher rate for daily trial transcripts.[1]

### C.      Fees and Disbursements for Printing

#### 1.      Deposition Exhibits

Plaintiffs also seek costs of $2,246.75 for printing exhibits to use at depositions.  In total,

plaintiffs contend that they marked approximately 200 exhibits and printed 13,700 pages.  As

noted, plaintiffs took fifteen depositions of defendants' thirteen witnesses.  For most of those

depositions, plaintiffs made three copies of the exhibits (one each for plaintiffs' counsel,

defendants' counsel, and the witness).  In nine of those depositions, the deponent spoke

Japanese, and plaintiffs therefore prepared two additional copies of each exhibit for the

interpreter and check interpreter.

Defendants do not dispute that plaintiffs are entitled to such costs, and overall, such an

amount seems reasonable in light of the number of depositions taken and copies required per

exhibit.  Therefore, the Court will award costs of $2,246.75 for the printing of deposition

exhibits.

#### 2.      Exhibits for Trial

Plaintiffs further seek costs of $27,520.40 for printing and copying of exhibits for use at

trial.  (Pls. Supp. Mem. at 10).  To recover copying costs, a litigant must sufficiently "inform the

court of the number of copies, the cost of each copy, and provide, if possible, a breakdown of the

reasons why photocopying of certain documents was necessary."  *Roggio v. Grasmuck*, 18 F.

---

[1] Defendants contend that the Court should disallow in costs for expedited daily trial transcripts because
plaintiffs did not request such costs to be taxable before trial.  (ECF No. 863, Defs. Opp. at 6 (citing Taxation of
Costs)).  Although not binding on this Court, that is an additional reason to deny the taxation of costs related to the
preparation of daily transcripts.  *See 600 Lb Gorrillas, Inc.*, 2018 WL 6332494, at *4 ("The Court agrees with
Gorillas that the 'Taxation of Costs' document issued by the Clerk's Office does not have the force of law") (internal
quotation marks omitted).

Supp. 3d 49, 61-62 (D. Mass. 2014) (internal quotation marks omitted).  However, "a page-by-page justification is not required."  *Bowling v. Hasbro*, Inc., 582 F. Supp. 2d 192, 210 (D.R.I. 2008).

Plaintiffs contend that they introduced 142 exhibits into evidence totaling 3,926 pages and that due to an agreement between the parties, they were required to print five copies of each exhibit (one each for defendants, the Court, the questioning attorney, and the court reporter, who requested one), and thus, printed a total of 19,630 pages.  They request an award of $27,520.40 on that basis.

As noted, plaintiffs also requested costs of $2,246.75 for printing approximately 13,700 pages of deposition exhibits.  (Pls. Supp. Mem. at 9-10).  That averages to approximately $0.16 per page ($2,246.75/13,700), which is very different than the approximately $1.40 per page rate for exhibits used at trial ($27,520.40/19,630).  At a rate of approximately $0.16 per page, the 19,630 pages for trial would have cost $3,219.24.  There is no explanation for the difference in rates other than that "some exhibits [at trial] were used with multiple witnesses."  (*Id.* at 10).

However, the invoices in Appendix A to plaintiff's memorandum in support show that plaintiffs may in fact be seeking to recover printing costs not for 19,630 pages but for 170,515 pages, or 43 copies of the 142 exhibits they introduced into evidence (170,515/3,926).  (Pls. Supp. Mem., App. A at 4 (listing the number of pages printed for "trial printing")).  At a rate of approximately $0.16 per page (the rate requested for the deposition exhibits), the 170,515 pages would total $27,963.84, which comes close to $27,520.40 (the amount plaintiffs request).

The Court cannot award such an extraordinary cost without some further explanation of why 43 copies of the trial exhibits were necessary.  *Palomar Techs.*, 2020 WL 4938414 ("16,000 pages of printing per deponent, without explanation, is unreasonable."); *see also* Taxation of

Costs at 4 ("Counsel must include a statement that the cost is no higher than what is generally charged for reproduction in the local area, and that *no more copies than what was actually necessary were reproduced.*") (emphasis added).  However, plaintiffs did explain why five copies of each exhibit were necessary.  Accordingly, the Court will allow the cost of printing exhibits for trial, but will reduce the award to $3,219.25, which represents the cost of five copies of the 142 exhibits introduced at trial (for a total of 19,630 pages) at a rate of approximately $0.16 per page.

### D.    Compensation of Interpreters, and Salaries, Fees, Expenses, and Costs of Special Interpretation Services

Plaintiffs claim costs of $78,710.36 for interpreters and special interpretation services pursuant to 28 U.S.C. § 1920(6).  (Pls. Supp. Mem. at 12).  Specifically, they claim $5,093.72 for the cost of an interpreter's services for plaintiffs' examinations of defendants' Japanese-speaking witnesses at trial, $51,394.08 for the cost of nine interpreted depositions of seven witnesses, three of which were introduced at trial, and $22,222.56 for translations of documents.

Defendants do not dispute plaintiffs' request for an award of the cost of the interpreter's services at trial, and such costs are taxable pursuant to 28 U.S.C. § 1920(6).  *Cf. East Boston Ecumenical Cmty. Council, Inc. v. Mastrorillo*, 124 F.R.D. 14, 15 (D. Mass. 1989) (noting that the costs of using interpreters at depositions would be recoverable if the party prevailed at trial). The Court will therefore award costs of $5,093.72 for the interpreter's services at trial.  In addition, the video depositions of Yamamoto, Yamamura, and Sakamoto, which cost a total of $16,971.84, were played at trial and thus, the costs of interpreters for those depositions are taxable.  Taxation of Costs at 5 ("Fees, expenses and costs of interpreters are taxable if their services or the product of their services (i.e., translated depositions) are used at trial"); (Pls. Supp. Mem., Ex. 10 at 1).  As to the remaining depositions, plaintiffs have not shown any

9

"special circumstances" warranting taxation, other than that the remaining four witnesses testified at trial.  Accordingly, the Court will only award the costs for the interpreted depositions that were played at trial—that is, $16,971.84.  The amount of $51,394.08 that plaintiffs seek to recover for interpreted depositions will therefore be reduced to $16,971.84.

Plaintiffs further seek costs of $22,222.56 for the translation of certain documents.  (Pls. Supp. Mem. at 13).  "Fees for translation of documents received in evidence, used as part of the proceeding or otherwise reasonably necessary for trial preparation are taxable."  Taxation of Costs at 5; *Haemonetics Corp v. Fenwal, Inc.*, 863 F. Supp. 2d 110, 118 (D. Mass. 2012) (disallowing costs for translated documents not used at trial where the prevailing party had not proven that they were reasonably necessary).  In support, they contend that many of the documents produced by defendants were in Japanese; that 23 of the documents in question were introduced into evidence at trial; and that the others were necessary "to understand the facts of the case, for depositions, and to prepare for trial."  (Pls. Supp. Mem. at 13).

Four of the invoices plaintiffs contend support their request are clearly not taxable.  (*See* Docket No. 863, Defs. Opp. at 10; Pls. Supp. Mem., App. A at 8 (tying their request for $22,222.56 to 15 invoices); Pls. Supp. Mem. at 13 (citing Pls. Supp. Mem., Ex. 9)).  First, invoice number "112580" requests $1,287 for "Consulting" related to "Documents:  serving instructions for Japan."  (Pls. Supp. Mem., Ex. 9 at 2).  That invoice appears to be identical to an invoice which plaintiffs sought to recover on the basis that it was a cost of service under the Hague Convention.  (*Compare id.*, *with id.*, Ex. 2 at 2).  The next invoice, dated June 30, 2016, seeks $1,323.36 for the translation of "patent, Exhibit 1004."  (*Id.*, Ex. 9 at 4).  Exhibit 1004 likely refers to Japanese Patent Publication No. 6-244444 ("Uematsu"), which defendants submitted as Exhibit 1004 to the U.S. Patent & Trademark Office on June 3, 2016, in a petition

for *inter partes* review of plaintiffs' U.S. Patent No. 7,884,446 ("the '446 patent"). (*See* Defs. Opp., Ex. A at 1). However, defendants also filed an English translation with that submission, which raises the question whether it was "reasonably necessary" for plaintiffs to prepare their own translation. (*Id.* at 8). Moreover, although defendants contended that Uematsu was prior art to two of the U.S. patents in this case—the '446 patent and U.S. Patent No. 8,680,591 (the "'591 patent")—plaintiffs withdrew all claims of infringement as to those patents before trial. (ECF 485, Defs. Mot. Summ. J., Ex. 10 at 32 (discussing the obviousness of the '446 patent in view of Uematsu); ECF 522, Defs. Opp. to Pls. Mot. Summ. J. at 2 (discussing the obviousness of the '591 patent in view of Uematsu); ECF 422, Stipulation of Partial Dismissal; ECF 715 (granting ECF 675, Motion for Leave to Amend the Complaint)).

Another invoice seeks $200 for translating "HPK0004966 (Hamamatsu S9840)," which likely refers to one of defendants' products known as the S9840. (Defs. Opp. to Pls. Mot. Summ. J. at 2; Pls. Supp. Mem., Ex. 9 at 6). Defendants relied on that product as prior art to the '591 patent, but again, plaintiffs withdrew all claims of infringement as to that patent before trial. Yet another invoice seeks $150 for translating a document identified only as "Attachment A" from Danish to English. (Pls. Supp. Mem., Ex. 9 at 28). It is not clear what "Attachment A" is, and therefore, how that document relates to this case. (*Id.*). Identification of the document is particularly necessary in light of the fact that the document was apparently originally in Danish, and to the Court's knowledge, none of the key events in this case took place in Denmark.

In short, none of those four invoices appear to relate to the 23 exhibits that were introduced at trial, and they also do not seem to relate to documents that were reasonably necessary for trial preparation. Accordingly, $2,960.36 of the $22,222.56 plaintiffs requested will be disallowed.

As to the remaining eleven invoices, which total $19,262.20, they either do not identify the underlying documents that were translated, (*see* Pls. Supp. Mem., Ex. 9 at 8, 16, 18, 20, 22, 24, 26, 30), or only list the translated documents by Bates numbers.  (Pls. Supp. Mem., Ex. 9 at 10, 12, 14).  It is therefore difficult to confirm whether such invoices relate to the translated documents that plaintiffs contend were admitted at trial, or otherwise relate to translated documents that were reasonably necessary for trial preparation.  Nevertheless, plaintiffs' supporting documentation shows that the 23 translated documents that were introduced at trial totaled approximately 577 pages.  (Pls. Supp. Mem. at 13 (citing to trial exhibits); *id.*, App. A at 5-8 (identifying the number of pages in each trial exhibit)).  If the remaining eleven invoices solely relate to those documents, plaintiffs spent approximately $33 per page to translate them ($19,262.20/577).  Plaintiffs appear to have spent more than that—approximately $78 per page—to translate Uematsu, which totaled 17 pages and cost $1,323.36 to translate.  (Defs. Opp., Ex. A at 10-26).  Although a patent may cost significantly more money to translate than other documents, it seems reasonable to assume that plaintiffs spent an average of $33 per page, and thus, to assume that all eleven remaining invoices relate to the translated documents that were introduced at trial.  Accordingly, the Court will award costs of $19,262.20 for "translat[ing] [] documents received in evidence."  Taxation of Costs at 5.

E.    **Fees of the Clerk and Costs Pursuant to the Mandate of the Court of Appeals**

Plaintiffs also seek $400 for fees paid to the clerk and marshal pursuant to 28 U.S.C. § 1920(1).  The phrase "fees of the clerk" is generally understood to refer to 28 U.S.C. § 1914, which permits the clerk to collect filing fees and other fees authorized by the Judicial Conference of the United States.  10 James Wm. Moore, Moore's Federal Practice, § 54.103[3][b] (3d ed. 1997).  Plaintiffs paid $400 to file the complaint in this case.  (Pls. Supp. Mem., Ex. 1).  Accordingly, the Court will award plaintiffs costs of $400 for fees paid to the clerk and marshal.

In addition, the Federal Circuit's March 3, 2021 mandate awarded costs of $620.96 to plaintiffs; therefore, the Court will also award that amount.  (ECF 858 at 2).

II.     <u>Conclusion</u>

For the foregoing reasons, the motion of Hamamatsu Photonics K.K. and Hamamatsu Corp. to disallow costs is GRANTED in part and DENIED in part. SiOnyx, LLC's and President and Fellows of Harvard College's motion for a bill of costs is GRANTED in the amount of $53,481.45, and is otherwise DENIED.

**So Ordered.**

<u>/s/  F. Dennis Saylor IV</u>
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated:  May 18, 2021